UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAWRENCE LOGGINS,<br><br>    Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION,<br><br>    Defendant. | Civil Action No.<br>21-cv-1129-EGS-MAU |

### REPORT AND RECOMMENDATION

Plaintiff Lawrence Loggins ("Loggins") brings this civil action against Defendant National Railroad Passenger Corporation ("Amtrak") for racial discrimination and hostile work environment in violation of 42 U.S.C. § 1981. Before the Court is Amtrak's Motion to Dismiss Loggins' Second Amended Complaint, or Alternatively, Motion to Transfer Venue ("Motion"). ECF No. 27. Because Loggins fails to allege facts sufficient to state a claim under Section 1981, this Court recommends that Amtrak's Motion be **GRANTED** and the Second Amended Complaint be **DISMISSED**. If the Second Amended Complaint is not dismissed, this Court recommends that Amtrak's Motion to Transfer be **GRANTED**.

### FACTUAL SUMMARY

On April 26, 2021, ten current or former Amtrak employees or applicants of Amtrak filed a complaint claiming that Amtrak discriminated against them and created a hostile work environment based on their race. ECF No. 1. On March 25, 2022, Plaintiffs filed a stipulation of dismissal seeking to dismiss all plaintiffs in the case except for Loggins. ECF No. 24. On March 30, 2022, Loggins filed a Second Amended Complaint as the sole remaining plaintiff in the case. ECF No. 26. Amtrak filed this Motion on April 13, 2022. ECF No. 27.

1

According to the Second Amended Complaint, Loggins, an African American man, was a conductor for Amtrak.  ECF No. 26 at ¶¶ 7, 10.  After Loggins admitted that he had sold cash fare tickets but had not turned in the proceeds of those sales, Amtrak removed him from service and placed him under an audit.  *Id.* at ¶ 13.  Loggins was later charged with selling tickets and failing to remit revenue to Amtrak.  *Id.* at ¶ 14.  According to his white supervisor, Loggins owed $4,331.25 for a two-year period, but he could return to work upon making restitution and accepting discipline.  *Id.*

Loggins ultimately agreed to waive the investigation and make restitution to Amtrak.  *Id.* at ¶ 15.  He also accepted a thirty-eight-day suspension.  *Id.*  According to Loggins, the waiver was to encompass all outstanding deficiencies in his account.  *Id.*  Loggins alleges that, after he signed the waiver, Amtrak continued to audit him and thereafter charged him for additional outstanding ticket revenues.  *Id.* at ¶ 16.  Loggins does not deny that he retained additional funds beyond those which he initially reported.  After the investigation, Loggins was dismissed from service.  *Id.* at ¶ 17.

Loggins appealed to the Public Law Board, which directed that Amtrak reinstate Loggins because Loggins brought the unaccounted-for tickets to Amtrak's attention in the first place.  *Id.* at ¶ 18.  The Board required, however, that Loggins make restitution for the additional deficiency.  *Id.*  Loggins does not specify whether he ever made restitution, in whole or in part, and whether he ever sought to be reinstated.

Loggins alleges that "[w]hite employees engaged in similar misconduct but were not similarly disciplined."  *Id.* at ¶ 19.  Loggins points to only one example: Lonnie Lavoie, a white conductor and revenue instructor who failed to remit funds in the amount of $1,652.00.  *Id.*  Unlike Loggins, Lavoie failed to voluntarily inform his supervisors of the shortfall.  *Id.* at ¶ 21.  Loggins

2

alleges that Lavoie claimed to have been merely "careless with his recordkeeping . . . ." *Id.* at ¶ 22. Loggins claims that Lavoie did not have to repay Amtrak for his shortfalls and, although he was terminated, Amtrak rehired Lavoie. *Id.* at ¶ 23. Loggins further asserts that Lavoie's "charges were expunged." *Id.* at ¶ 24.

The remaining allegations against Amtrak are vague and conclusory. For example, Loggins claims in a formulaic fashion that he "was subjected to racial harassment and a racially hostile work environment during [his] employment at Amtrak." *Id.* at ¶ 25. Loggins does not state any supporting facts for his claims, but instead asserts that he

> . . . experienced intentional racial discrimination by Amtrak in regard to some or all of the following: position selection decisions and processes, including promotions, transfers, testing and denial of testing opportunities, training, job assignments, work assignments, scheduling of work hours and vacation time, discipline, discharge, furlough and recall from furlough, and other terms and conditions of employment.

*Id.* at ¶ 12.

His recitation of the elements of his claims under Section 1981 are similarly formulaic. *See, e.g., id.* at ¶ 28 ("Amtrak has discriminated against [Loggins] by denying [him] the same rights as are enjoyed by white non-exempt Amtrak employees . . . in the making, performance, modification and termination of their employment relationship with Amtrak . . . ."); ¶ 29 ("Amtrak's conduct has been intentional, deliberate, willful and conducted in callous disregard of the rights of [Loggins]."); and ¶ 31 ("[b]y reason of Amtrak's discrimination, [Loggins] is entitled to all legal and equitable remedies available under § 1981, including, but not limited to, damages for mental anguish and punitive damages.").

## ANALYSIS

### A. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether a complaint has stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and which "accepted as true, [] 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when the "plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A pleading that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Although the Court must accept all well-pleaded facts and inferences as true when evaluating a motion to dismiss under Rule 12(b)(6), conclusory allegations are not entitled to the assumption of truth. *Id.* at 679. Nor must the Court accept "legal conclusions cast as factual allegations" or "inferences drawn by plaintiff if those inferences are not supported by the facts" set forth in the complaint. *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012).

### B. Racial Discrimination

Loggins appears to assert two claims against Amtrak under Section 1981: racial discrimination and hostile work environment. Section 1981 protects the right to make and enforce contracts free from racial discrimination. 42 U.S.C. § 1981. This includes a prohibition on

"private employers [] intentionally discriminating on the basis of race with respect to the 'benefits, privileges, terms, and conditions' of employment." *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013) (per curiam) (quoting 42 U.S.C. § 1981).

To plead a racial discrimination claim under Section 1981, a plaintiff "must establish that the defendant had an intent to discriminate on the basis of race or a racially discriminatory purpose for the defendant's action." *Wright v. Eugene & Agnes E. Meyer Foundation*, 2021 WL 6134592, at *4 (D.D.C. Dec. 29, 2021) (internal quotation marks and citations omitted). He must allege some facts that demonstrate that his race was the reason for the defendant's actions. *See Apollo v. CVS Pharmacy*, 2019 WL 147475, at *2 (D.D.C. Jan. 9, 2019) (citing *Ridley v. VMT Long Term Care Mgmt., Inc.*, 68 F. Supp. 3d 88, 90 (D.D.C. 2014)). A "'plaintiff cannot merely invoke [his or her] race in the course of a claim's narrative and automatically be entitled to pursue relief.'" *Apollo*, 2019 WL 147475, at * 2 (quoting *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.D.C. 1990)).

Here, Loggins has failed to allege plausible facts that Amtrak discriminated against him on the basis of his race. Many of Loggins' allegations are formulaic and conclusory assertions. For example, Loggins claims that he was "subjected to discriminatory application of discipline policies and procedures," although he does not allege *which* policies and procedures were at issue and *how* Amtrak applied those in a discriminatory manner. ECF No. 26 at ¶ 13; *see also id.* at ¶¶ 12, 25, 26, 28-31. Setting aside those conclusory assertions, which the Court need not accept as true, the only arguably specific facts deal with how Amtrak treated Loggins versus Lonnie Lavoie, a white employee and conductor who also wrongfully retained money from cash ticket sales. Even those allegations, however, fail to state a claim under Section 1981.

There is no dispute that Loggins kept money for himself from ticket sales that he should have transmitted to his employer. Loggins admits that he failed to turn more than four thousand

dollars of ticket sales over a two-year period in to Amtrak. ECF No. 27 at ¶ 14. He also admits that he agreed to a thirty-eight-day suspension and discipline for that misconduct. *Id.* at ¶ 15. He complains that Amtrak should have abandoned his audit of him but did not and, in doing so, found that Loggins had retained additional cash he had not brought to Amtrak's attention. *Id.* at ¶ 16. Loggins further alleges that, after he was dismissed, the Public Law Board directed that Amtrak reinstate Loggins as long as Loggins made restitution for the additional deficiencies. *Id.* at ¶ 18. Although it is unclear, Loggins' complaint appears to be that Amtrak discriminated against him versus Lavoie because Amtrak rehired Lavoie after terminating him, did not require Lavoie to repay Amtrak, and that "Lavoie's charges were expunged." *Id.* at ¶¶ 23, 24.

For a number of reasons, it is doubtful that Lavoie is an appropriate comparator for the purposes of Loggins' racial discrimination claim. Lavoie wrongfully retained approximately $1600, whereas Loggins retained more than $4300. *Id.* at ¶¶ 14, 19. Nor does it appear that Lavoie is similarly situated from a procedural standpoint: unlike Loggins, Lavoie did not sign a waiver of investigation, after which Amtrak discovered additional funds that Lavoie retained for himself. *Id.* at ¶¶ 15-18. Finally, it does not appear that Lavoie was dismissed from service for the same reason as Loggins, namely having retained additional funds beyond the initial amount he claimed to have taken. *Id.*

Even assuming for the sake of argument, however, that Lavoie is an appropriate comparator, the Second Amended Complaint is devoid of factual allegations sufficient to state a plausible claim that Amtrak's actions were motivated by racial discrimination. First, to the extent that Loggins complains that Amtrak terminated him, his own allegations reflect that Lavoie was also terminated. *Id.* at ¶ 23. Second, to the extent that Loggins complains that Amtrak did not require Lavoie to repay Amtrak, it is clear from the face of the complaint that Loggins "agreed to

make restitution to Amtrak" and that the *Public Law Board*, not Amtrak, ordered Loggins to pay the additional restitution. *Id.* at ¶ 18. It is implausible to infer that Amtrak was motivated by racial discrimination merely because it sought restitution of thousands of dollars that Loggins had wrongfully retained for himself. Third, to the extent that Loggins complains that Amtrak rehired Lavoie after terminating him, Loggins fails to offer facts sufficient to show that Amtrak treated him differently. For example, Loggins does not allege that he requested and Amtrak refused to rehire him after the Public Law Board appeal. Nor does Loggins address whether he made the additional restitution that the Board ordered as a condition of reinstatement. Finally, although Loggins complains that "Lavoie's charges were expunged," he offers no factual allegations about the status of *his* charges. *Id.* at ¶ 24. Again, there are no allegations, for example, that Loggins requested to have his charges expunged and Amtrak denied the request but granted the same request of a white counterpart. Loggins fails to offer supporting facts which reflect racial discrimination from Amtrak as to any of these acts. Without more, Loggins has failed to allege that his race was the reason Amtrak treated him any differently from Lavoie, to the extent Amtrak did treat Loggins differently.

As such, Loggins has failed to present facts which, if true, would entitle him to relief for race discrimination under Section 1981. *See Wright*, 2021 WL 6134592, at *4 (dismissing Section 1981 claim because plaintiff failed to connect her race to alleged mistreatment and claims of discrimination were otherwise "too general or conclusory to state a claim of racial animus."); *see also Mekuria v. Bank of Am.* 883 F. Supp. 2d 10, 13–16 (D.D.C. 2011) (dismissing Section 1981 claim because "[a]t the end of the day, Plaintiff's case boils down to an argument that because he was mistreated and because he is black, there must be some connection between the two.").

**C. Hostile Work Environment**

Loggins' claim for "racial harassment" and hostile work environment is also woefully deficient. To state a claim for hostile work environment, a plaintiff must allege that "his employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently sever or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (internal citations and quotation marks omitted). Moreover, the victim must "subjectively perceive the environment to be abusive, and the complained about conduct must be so severe or pervasive that it objectively creates a hostile or abusive work environment." *Toomer v. Mattis*, 266 F. Supp. 3d 184, 193 (D.D.C. 2017) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Here, Loggins offers *no* allegations about an alleged hostile work environment, subjective or otherwise. Beyond his conclusory statement that he "was subjected to racial harassment and a racially hostile work environment during [his] employment at Amtrak," he offers no specific facts to support that conclusory assertion. ECF No. 26 at ¶ 25. His failure to allege any facts about the workplace or any alleged harassment is fatal to his second claim under Section 1981.

**D. Motion to Transfer**

Because this Court recommends that Loggins' Second Amended Complaint be dismissed, the Court need not consider Amtrak's alternative argument that the case be transferred to the U.S. District Court for the Northern District of Illinois. For the purpose of completeness, however, the Court recommends that the case be transferred if it were not dismissed.

Loggins is located in Chicago and all alleged misconduct occurred there. The one comparator to which Loggins cites—Lonnie Lavoie—also works out of Chicago. The Public Appeal Board which played a part in the case according to Loggins is also located in Chicago. There is no apparent connection to this District other than that Amtrak is headquartered here.

8

Loggins does not dispute any of this and states that the case should remain in this Court because Amtrak is headquartered here, "the Human Resources function is overseen in the District of Columbia and the employment records needed for the case are maintained in the District of Columbia." ECF No. 28 at 9. He states generally that, because other cases are pending against Amtrak in this Court, the Court is familiar with the cases.

Weighing the factors at issue, the Court finds that the reasons Loggins offers do not outweigh the fact that key witnesses are located in Chicago and all events occurred there. Accordingly, this Court recommends that, for the convenience of the parties and in the interests of justice, the case be transferred if it is not dismissed. *See* 28 U.S.C. § 1404(a); *Wedge v. Potter*, 2006 WL 3191232, at *2 (D.D.C. Nov. 1, 2006) (transferring case to Maryland where all events described in the complaint occurred in Maryland, cause of action arose in that jurisdiction, and relevant witnesses and documents were located there).

## CONCLUSION

For the foregoing reasons, the Court recommends that Amtrak's Motion to Dismiss be **GRANTED** and that the Second Amended Complaint be dismissed for failure to state a claim. If not dismissed, this Court recommends that the case be **TRANSFERRED** to the U.S. District Court for the Northern District of Illinois.

* * *

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis

9

for such objections.  The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985).


Date: December 1, 2022

_____
MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE